**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re ) | | Chapter 7 |
| ) | | |
| RITZ CAMERA & IMAGE, L.L.C., *et al.*, ) | | |
| ) | | Case No. 12-11868(KG) |
| Debtors. ) | | |
| ) | | |
| In re ) | | |
| ) | | |
| RITZ CAMERA & IMAGE, L.L.C. ) | | Adv. Pro. No. 12-50986(KG) |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| CANON U.S.A., INC., ) | | |
| Defendant. ) | | **Re: Dkt. Nos. 14, 16, 20, 21, 23, & 25** |
| ) | | |

**MEMORANDUM OPINION**

The Debtors commenced this adversary proceeding on November 14, 2012, by filing a complaint against Defendant Canon U.S.A., Inc. ("Canon"), seeking the avoidance and recovery of fraudulent and preferential transfers. Following the conversion to Chapter 7 and the appointment of Alfred T. Giuliano (the "Trustee") as Chapter 7 trustee, on June 25, 2013, the Trustee filed the Amended Complaint, adding nine claims, including claims for unconscionability, economic duress, unjust enrichment, and declaratory relief. The Court is now ruling on Canon's Motion to Dismiss Counts One, Two, and Nine Through Twelve of the Amended Complaint (the "Motion"). For the following reasons, the Court will grant, in part, and deny, in part, the Motion.

## FACTS

### Ritz Camera I

Canon is a manufacturer of plain paper, copying machines, office multifunction devices, laser printers, cameras and related goods that controlled approximately 45% of the digital single-lens reflex camera market in the United States. (Am. Compl. at ¶ 75, Dkt. No. 14.) Ritz Camera is an electronics and camera merchandiser. (Am. Compl. at ¶ 3.) On February 22, 2009, Ritz Camera Centers ("RCC") filed a Chapter 11 petition in the Bankruptcy Court for the District of Delaware (Case No. 09-10617(MFW)). (Am. Compl. at ¶ 14.)

On July 3, 2009, RCC moved to sell substantially all of its assets. On July 20, 2009, the Debtor held an auction at which three bidders participated, and RCI Acquisition, LLC emerged as the winning bidder. Canon objected to the sale to RCI Acquisition, asserting, among other things, that the sale would result in a transfer of assets to an insider. (Am. Compl. at ¶ 15.) Specifically, Canon asserted that David Ritz, RCC's former Chief Executive Officer and President, owned and operated RCI Acquisition. (Decl. of Paul Ruben at Ex. 3, ¶¶ 12, 30, Dkt. No. 21.) The court nonetheless approved the sale of RCC's assets to RCI Acquisition over Canon's objection. (Am. Compl. at ¶¶ 14, 15.)

Canon filed a proof of claim asserting that RCC owed Canon almost $17 million based on a $834,419.23 claim for reclamation and a $16,023,274.90 general unsecured claim. (Am. Compl. at ¶ 18.) RCC disputed the claims by filing an adversary proceeding seeking turnover, disallowance of the reclamation claim, and a reduction of the general

unsecured claim. (Am. Compl. at ¶ 19.) The parties settled the dispute by stipulating that Canon would hold an allowed general unsecured claim for $14,567,227 and a reclamation claim for $834,419.23, but both claims would be offset against a $1,286,594.66 payment to RCC for postpetition credits. (Am. Compl. at ¶ 20.)  Canon retained any claims it might have against the former officers, directors, shareholders, or employees of RCC and the Debtors. (Am. Compl. at ¶ 21.) As a result, the total reduction of Canon's claim was $1,908,823.33. (Am. Compl. at ¶ 25.)

Thereafter, Canon ceased supplying its products to the Debtors. (Am. Compl. at ¶ 22.) The Debtors determined that they could not effectively compete against similar retailers without the ability to sell Canon products. (Am. Compl. at ¶ 76.) Two years following the sale to the Debtors, Canon and the Debtors entered into an agreement (the "Settlement Agreement") as a precondition to Canon supplying products to the Debtors. (Am. Compl. at ¶¶ 4, 22.)  Upon execution of the Settlement Agreement, the parties entered into a dealer supply agreement (the "Supply Contract"), for the supply of Canon products to the Debtors. (Am. Compl. at ¶ 4.) At the time the parties entered into the Settlement Agreement and Supply Contract, the Debtors were operating at a net loss and auditors opined that the Debtors' ability to continue as a going concern was questionable. (Am. Compl. at ¶ 34(a), (b).)

The Settlement Agreement, which the parties agree is governed by Delaware law, purported to establish a new sales relationship between the parties by settling and releasing outstanding grievances and potential claims that Canon could assert against the Debtors and their affiliates. (Am. Compl. at ¶24.) The Settlement Agreement did not

specify the outstanding grievances or potential claims Canon held. (Am. Compl. at ¶ 24.) The Settlement Agreement provided that the Debtors would make a total payment of $5 million, consisting of an initial $2 million payment followed by monthly fees equal to a fixed percentage of the products' aggregate purchase price. (Am. Compl. at ¶ 22.) The Settlement Agreement did not address the cost of products; only the Supply Contract governed the supply and purchase of products. (Am. Compl. at ¶¶ 22, 33.)

Between August 26, 2011 and June 10, 2012, pursuant to the Settlement Agreement, the Debtors made seven payments to Canon. These payments totaled $3,170,338.95. (Am. Compl. at ¶ 23.)

<u>Ritz Camera II</u>

On June 22, 2012, the Debtors filed their second bankruptcy petitions under Chapter 11 of the Bankruptcy Code. (Am. Compl. at ¶ 27.) On November 14, 2012, the Debtors initiated this adversary proceeding by filing a complaint seeking to avoid and recover fraudulent and preferential transfers. On January 15, 2013, the Court converted the Chapter 11 case to Chapter 7 and subsequently appointed the Trustee. (Am. Compl. at ¶¶ 28, 29.) On June 25, 2013, the Trustee filed the Amended Complaint, which added claims for unconscionability, economic duress, unjust enrichment, and declaratory judgment.

In the Amended Complaint, the Trustee alleges that Canon used its superior bargaining position and the Debtors' need to sell Canon products to force the Debtors to agree to the terms of the Settlement Agreement. (Am. Compl. at ¶ 79.) The Trustee further alleges that the terms of the contract are so outside of community business

4

practices that they shock the conscience (Am. Compl. at ¶ 80) and that the Debtors had no reasonable alternative to entering into the Settlement Agreement. (Am. Compl. at ¶ 87.) Additionally, the Trustee argues that the Settlement Agreement resulted from Canon's wrongful misrepresentations regarding the outstanding grievances and potential claims and any payments under the Settlement Agreement unjustly enrich Canon. (Am. Compl. at ¶ 94.)

## **STANDARD OF REVIEW**

To properly plead a claim, Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion to dismiss for failure to state a claim requires a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court must first separate the factual and legal elements of a claim, accepting all of the complaint's well-pleaded facts as true, and drawing all reasonable inferences therefrom in favor of the non moving party. *Id.* However, the Court may "disregard any legal conclusions" *id.* at 210-11, "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false". *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996). A court "may also consider matters of public record, orders, exhibits attached to the complaint and items

appearing in the record of the case." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011).

The court must then determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679, (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This is a case specific determination, which requires the court "to draw on its judicial experience and common sense." *Id.* at 679. Essentially, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). If however, the court determines that no matter how true the allegations in the complaint may be, they could not entitle the plaintiff to relief, this basic deficiency should ". . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558. (internal quotation marks omitted).

## **DISCUSSION**

### Counts 1 & 2: Avoidance and Recovery of Payments Pursuant to §§ 548(a)(1)(B) & 550

The Trustee seeks to avoid the payments made under the Settlement Agreement as fraudulent transfers pursuant to Section 548(a)(1)(B) of the Bankruptcy Code. Canon

6

argues that the Court should dismiss Counts 1 and 2 because the Trustee has failed to demonstrate the absence of reasonably equivalent value.

The Bankruptcy Code allows a trustee to avoid a transfer in interest of the debtor made within two years before the petition date if the debtor:

> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation….

11 U.S.C. § 548(a)(1)(B). Although the Bankruptcy Code does not define "reasonably equivalent value," the Third Circuit has stated that "a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave.'" *VFB LLC v Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007). In determining whether a debtor has received "reasonably equivalent value," courts look to the totality of the circumstances surrounding the transfer. *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 568 (Bankr. D. Del. 2012).

In evaluating the totality of the circumstances, a court should first determine whether "based on the circumstances that existed at the time of the transfer [or obligation] it was 'legitimate and reasonable' to expect some value accruing to the debtor." *Id.*. If the debtor has received value, the court should "engage in a fact-driven comparison between such value and the transfer or obligation sought to be avoided to determine 'whether the debtor got roughly the value it gave.'"*Id.* In so doing, courts consider factors such as "(1) the fair market value of the benefit received as a result of the

7

transfer, (2) the existence of an arm's-length relationship between the debtor and the transferee, and (3) the transferee's good faith." *Id.*

Where a party's only basis for dismissing the complaint for recovery of payments under 11 U.S.C. § 550 is the dismissal of the underlying claim, it is proper to rule on the Section 550 claim in the same manner as the underlying claim. *See In re Washington Mutual, Inc.*, 2013 WL 3757330 (Bankr. D. Del. July 16, 2013) (denying a motion to dismiss the count for recovery where the court declined to dismiss the related avoidance count); *Autobacs Strauss*, 473 B.R. at 568 (same).

Accepting all factual allegations as true, the Amended Complaint succeeds in stating a claim for avoidance of a fraudulent transfer. The transfers were made within two years of the petition date and the Amended Complaint asserts that the Debtors were insolvent, as demonstrated by their operating losses. Additionally, the Amended Complaint asserts that the Debtors did not receive goods under the Settlement Agreement. Although the payments under the Settlement Agreement might reflect the reasonably equivalent value of a business relationship with Canon, such equivalence is neither obvious nor definite. The Court cannot determine such issues without evidence.

The Trustee has alleged facts sufficient to survive the Motion. Therefore, the Court will deny the Motion for Count 1. Count 1 is the basis for Count 2 and the Court must also refuse to dismiss Count 2.

Count 9: Unconscionability

The Trustee alleges that the Settlement Agreement was unconscionable because Canon used its superior bargaining power to coerce the Debtors' agreement to the

contract terms. The Trustee further alleges that the terms of the Settlement Agreement are unfair and beyond what is commercially reasonable. Canon argues, to the contrary, that sophisticated parties negotiated the Settlement Agreement at arms' length.

Whether a contract is unconscionable is a question of state law. *In re Finney*, 130 Fed. Appx. 527, 530 n.3 (3d Cir. 2005). A claim for unconscionability must demonstrate "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, 2002 WL 1558382, at *11 (Del. Ch. July 9, 2002) (quoting Farnsworth on Contracts § 4.28 (2d ed. 2000)). A plaintiff must allege sufficient facts regarding the "commercial setting, purpose and effect" of a contract at the time of creation. *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 961 (Del. 1978). "The traditional test is this: a contract is unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, as no honest or fair man would accept, on the other." *Id.* at 960 (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 450 (D.C. Cir. 1965)). Ultimately, it is a "question of whether the provision amounts to the taking of an unfair advantage by one party over the other." *J.A. Jones Constr. Co. v. City of Dover*, 372 A.2d 540, 552 (Del. Super. 1977).

A simple adhesion contract, presented on a "take-it-or-leave-it" basis, does not alone give rise to a claim for unconscionability. *Graham v. State Farm. Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del. 1989). *See also Progressive Int'l*, 2002 WL 1558382, at *8 (holding that there is no deprivation of meaningful choice where a party retains the ability to walk away). Similarly, superior bargaining power without an element of

9

unreasonableness does not support a finding of unconscionability. *Tulowitzki*, 396 A.2d at 960. Generally, courts are reluctant to apply the doctrine of unconscionability, particularly against sophisticated corporations, because bargaining power among parties will rarely be equal. *Progressive Int'l*, 2002 WL 1558382, at *11.

Often courts find unconscionability where the contract is between a sophisticated party and an unsophisticated individual and such disparity in sophistication is clear. For example, in *Ryan v. Weiner*, 610 A.2d 1377 (Del. Ch. 1992), the plaintiff sought to cancel a deed that he transferred to the defendant. Plaintiff was 69 year old man with a ninth grade education who had fallen behind on his mortgage payments. The mortgage lender obtained a default judgment for the balance of the loan and scheduled a sheriff's sale of the home. Plaintiff's home had nearly $12,000 in equity. The defendant, a licensed real estate broker, showed up at the plaintiff's home unannounced, and although they disputed the content of their conversations, they agreed that the defendant did not offer to make a cash payment to the plaintiff.

The next day, the defendant took the plaintiff to the defendant's lawyer's office where the plaintiff signed several documents without receiving an explanation by the lawyer. Neither the defendant nor his lawyer advised the plaintiff of his right to seek independent legal advice. Ultimately, the plaintiff signed documents transferring the home to the defendant and also assigning all money held in escrow to the defendant. Although the deed indicated that the plaintiff received $7,000.00 in consideration, the plaintiff received no cash and the defendant did not satisfy the outstanding mortgage or default judgment. Although the defendant brought the loan current with the mortgage

company, he did not assume the legal obligations of the mortgage. The parties also executed a lease under which the plaintiff paid the defendant more $21,000.00 over seven years. As a result, the plaintiff transferred ownership of his property without receiving any value while remaining personally liable for the balance of the mortgage.

The court found that the transaction was unconscionable because the plaintiff received no benefit from the transaction while the defendant received a windfall. The court further noted that the process was one-sided, particularly with the plaintiff's obvious lack of sophistication and other circumstances. The court concluded that the transaction "involves shockingly unconscionable financial terms, coupled with innocent failure to understand the transaction on one side and sharp and predatory practices on the other." *Ryan*, 619 A.2d at 1387. *See also Trethewey v. Basement Waterproofing Nationwide, Inc.*, 1994 WL 680072, at *3 (Del. Super. Oct. 19, 1994) (holding a contractual limitation on all forms of damages was unconscionable); *Fritz v. Nationwide Mut. Ins. Co.*, 1990 WL 186448 (Del. Ch. Nov. 26, 1990) (finding an arbitration provision unconscionable where the provision automatically bound the consumer, but bound the company only by written consent); *Emery-Watson v. Mantakounis (In re Emery-Watson)*, 412 B.R. 670 (Bankr. D. Del. 2009) (finding a sale of a home in order to save the home from foreclosure unconscionable because the terms of the sale were one sided particularly where the defendant purchased the home for 20 percent of its appraised value).

Here, even construing the facts in the light most favorable to the Trustee, the Amended Complaint fails to state a claim for unconscionability. The Trustee asserts that

the Settlement Agreement in its entirety is unconscionable. Unlike the plaintiffs in the cases that have found terms of a contract presented on a "take-it-or-leave-it" basis unconscionable, both the Debtors and Canon are sophisticated parties. If the Debtors had concerns prior to executing the Settlement Agreement, the Debtor could have chosen to walk away. Instead, these sophisticated parties signed the Settlement Agreement which included a statement that each of the parties "has had the opportunity to thoroughly discuss [the Agreement's] terms with its counsel and the final terms of this Agreement are the product of the parties' negotiations." (Complaint at Ex. 1 ¶ 9, Dkt. No. 1.) The Trustee has not plead an absence of meaningful choice or the existence of superior bargaining power that would shock the conscience. Accordingly, the Court will dismiss Count 9.

### Count 10: Economic Duress

The Trustee asserts that Canon knew of the Debtors' need to sell Canon products and used this knowledge to require the Debtors to enter into the Settlement Agreement before resuming the sale of Cannon products. The Trustee further alleges that the Debtors had no reasonable alternative to entering into the Settlement Agreement because Canon products were vital to the Debtors' business. Canon argues that the Trustee has failed to allege the elemental facts to support an economic duress claim.

"Economic duress exists where one is deprived of the free exercise of will through wrongful threats or acts directed against a party's business interests." *Riverbend Cmty., LLC v. Green Stone Eng'g., LLC*, 2012 WL 1409013, at *7 (Del. Super. Apr. 4, 2012). Generally, a party must show "(1) a wrongful act, which (2) overcomes the will of

the person (3) who has no adequate legal remedy to protect his interest." *Conger v. Legg Mason, Inc.*, 2011 WL 5301787, at *2 (Del. Super. July 21, 2011). "Generally, the threat to exercise a legal or contractual right that the maker of the threat clearly holds is not, in and of itself, improper." *Block Fin. Corp. v. Inisoft Corp.*, 2006 WL 3240010, at *5 (Del. Super. Oct. 30, 2006). "Aggressive negotiation" does not constitute duress because a necessary component of the bargaining process is the "implied threat that the party will not perform unless his terms are accepted." *Riverbend Cmty*, 2012 WL 1409013, at *7 (quoting *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 769 F.Supp. 671, 739 (D. Del. 1991)). Furthermore, a claim for economic duress will not stand "where the party 'has a reasonable alternative to succumbing and fails to take advantage of it.'" *Id.*

A sustainable economic duress claim requires pleading the three elements above. Here, the Amended Complaint fails to allege the first element, a wrongful action by Canon. Even taken in the light most favorable to the Trustee, the Amended Complaint merely states that Canon would agree to enter into the Supply Contract only if the Debtors executed the Settlement Agreement. At the time the parties entered into the Settlement Agreement, the Debtors and Canon had no business relationship and Canon had no legal obligation to resume supplying products to the Debtors. *See e.g. Eastern States Retail Lumber Dealers' Assoc. v. United States*, 234 U.S. 600, 614 (1914) ("A retail dealer has the unquestioned right to stop dealing with a wholesaler for reasons sufficient to himself and may do so because he thinks such dealer is acting unfairly in trying to undermine his trade."); *United States v. Trans-Missouri Freight Assoc.*, 166 U.S. 290, 320 (1897) ("The trader or manufacturer, on the other hand, carries on an

entirely private business, and can sell to whom he pleases."). Thus, in declining to resume the business relationship with the Debtors, Canon was properly within its rights and the Trustee asserts no facts to the contrary.

Furthermore, the Debtors had a reasonable alternative to entering into the Settlement Agreement – continuing the business without offering Canon products. Although selling Canon products could have been beneficial to the Debtors' business, there were numerous other products the Debtors could sell. Accordingly, the Amended Complaint fails to allege facts sufficient to support a claim for economic duress and the Court will dismiss Count 10.

Count 11: Unjust Enrichment

The Trustee asserts that because the Settlement Agreement was based on wrongful conduct, allowing Canon to retain the payments made under the Settlement Agreement would constitute unjust enrichment. Canon argues that the Court must dismiss the unjust enrichment claim because the parties' relationship is governed by contract and, therefore, the Trustee has a remedy at law.

To succeed on a claim for unjust enrichment, a party must show "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). "If unjust enrichment arises from a relationship governed by contract, then that contract 'alone must provide the measure of the plaintiff's rights.'" *AM Gen. Holdings LLC v. Renco Group, Inc.*, 2013 WL 5863010, at *15 (Del. Ch. Oct. 31, 2013) (quoting *Nemec*, 991 A.2d at

1130 (Del. 2010)); *Kuroda v. SPJA Holdings, LLC*, 971 A.2d 827, 891 (Del. Ch. 2009) ("unjust enrichment cannot be used to circumvent basic contract principles").

Here, it is clear that the Trustee has failed to allege that there is no remedy available at law. To the contrary, the parties entered into the Settlement Agreement which provides the Trustee with various remedies under contract law and governs the parties' rights. Accordingly, the Court will dismiss Count 11.

Count 12: Declaratory Judgment

Pursuant to the Declaratory Judgment Act, the Trustee seeks a declaration that Canon has an obligation to return the payments made under the Settlement Agreement. Canon argues that because the Amended Complaint does not support the claims for unconscionability, economic duress, and unjust enrichment, the Trustee is not entitled to a declaratory judgment that the Settlement Agreement is unenforceable. In response, the Trustee argues that an actual controversy exists with respect to Canon's right to receive the payments and therefore the claim for a declaratory judgment stands.

The availability of a declaratory judgment is within the court's discretion but, the case must involve an actual controversy that is ripe for judicial determination. *TVI Corp. v. Gallagher*, 2013 WL 58009271, at *18 (Del. Ch. Oct. 28, 2013) (citing *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1238-39 (Del. Ch. 1987)).

There are no counts in the Amended Complaint supporting the request for declaratory relief that survive the Motion. Therefore, an actual controversy does not exist

in this adversary proceeding that would provide a basis for declaratory relief. Accordingly, the Court will dismiss Count 12.

## **CONCLUSION**

For the foregoing reasons, the Court will deny the Motion as to Counts 1 and 2 and grant the Motion as to Counts 9, 10, 11, and 12. The Court will issue an order consistent with this ruling.

Dated:  February 4, 2014

_____
KEVIN GROSS, U.S.B.J.